IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCUS YUNG-GYU EPSTEIN,

    Plaintiff,

v.

RAW STORY MEDIA, INC.,
JOHN BYRNE, ROXANNE COOPER,
DAVID FERGUSON

    Defendants.

**BENCH TRIAL REQUESTED**

## COMPLAINT

1. This action arises out of the defamatory and false statements and representations regarding plaintiff Marcus Yung-gyu Epstein ("Mr. Epstein") contained in an article written by defendant David Ferguson, posted on the website of Raw Story, which is published by defendant Raw Story Media, Inc., which is edited and published by defendant Roxanne Cooper and whose chairman and CEO is defendant John Byrne (collectively, "Defendants").

2. On November 9, 2017, Defendants published an article falsely claiming that Mr. Epstein is a "violent felon." In fact, Mr. Epstein has never been charged with or convicted of a felony.

3. Defendants never contacted Mr. Epstein before publishing their vicious smear piece on him. They made no attempt whatsoever to verify their false claim that Mr. Epstein was a "violent felon." Instead, they created this allegation from thin air, without any credible source whatsoever, in order to attack and vilify Mr. Epstein.

4. Defendants' article also states that Mr. Epstein is a "longtime racist provocateur" who unapologetically instigates, encourages and practices violence against racial minorities, and

1

makes these activities his primary calling in life. Nothing could be further from the truth. Mr. Epstein is not white, but half-Korean and half-Jewish (a fact that Raw Story neglected to mention in its desperation to smear Mr. Epstein as a "violent white nationalist"). He is a self-employed attorney and regulatory policy expert who has not written outside his legal and academic specialty in antitrust and regulatory policy since 2009. Like millions of Americans, he struggled with alcohol abuse in his 20s and was arrested on several misdemeanor charges as a result. But he has remained sober and out of trouble for over a decade. In that time, he graduated from University of Pennsylvania School of Law, was admitted to the Maryland Bar, and built a successful legal practice. Defendants' representation and imputation that Mr. Epstein is an unapologetic violent felon who spends his time publishing for "white nationalist" journals and serving as a featured speaker at "white nationalist" conferences is utterly false. However, these terms have become vague and subjective slurs applied to many mainstream figures and have not yet been recognized as defamatory *per se*. See, e.g., *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988). Thus, he is solely challenging the claim that he is a "violent felon" in this lawsuit.

5. Defendants' publication of the malicious falsehood that Mr. Epstein is a "violent felon" has damaged Mr. Epstein's reputation and constitutes libel *per se*. Defendants' portrayal of Mr. Epstein has worked tirelessly for a decade to reclaim his life and reputation after his arrests. By falsely portraying Mr. Epstein as a "violent felon," Defendants has tried to destroy that work with a single publication.

## THE PARTIES

6. Plaintiff Marcus Yung-gyu Epstein is an attorney and antitrust policy analyst. He is a citizen of the Commonwealth of Virginia and currently resides at 906 N. Fillmore St., Arlington, VA 22209.

7.  Defendant Raw Story Media, Inc. ("Raw Story") is a for-profit corporation organized under the laws of the Massachusetts and with its principal place of business in the District of Columbia. Raw Story publishes the news website rawstory.com.

8.  Defendant David Ferguson is a reporter for Raw Story. On information and belief, he is a resident of the State of Georgia, residing at 140 Harold Dr., Athens, GA 30606. Prior to being hired by Raw Story, he blogged under the pseudonym "T-Rex" at the left-wing blog Firedoglake, as on several personal blogs, most of which are now defunct.

9.  At Firedoglake and his personal blogs, Mr. Ferguson was known for using vulgar, sexist, profane and racially-charged language towards those he disliked. For example, he called conservative talk radio host Laura Ingraham a "cunt" and described Republican presidential nominee John McCain as a "pencil-dicked old pus-stain." Mr. Ferguson once upbraided a Puerto Rican female blogger (Liza) who had criticized a white female co-blogger of Ferguson's (Jane) as follows: "So, Liza, dear, before you go assailing your betters and making Jane stand in for every blond white woman who ever pissed you off, maybe you should head back to eighth grade English and, you know, learn to spell and to write in a linear fashion." On information and belief, Raw Story knew of Mr. Ferguson's history of posting vulgar, insulting and profane content on Firedoglake and his personal blogs before hiring him.

10.  Defendant Roxanne Cooper is the editor and publisher of Raw Story. On information and belief, she is a resident of the State of California, residing at 393 Silver Ridge Rd., Rio Vista, CA 94571.

11.  Defendant John Byrne is CEO and Chairman of Raw Story. On information and belief, Defendant is a resident of the State of Florida 1200 West Ave. Apt 1116, Miami Beach, FL 33139-4321.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with the District of Columbia.

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(a)(2) because a substantial part of the events giving rise to the claim arose in the District of Columbia.

## FACTUAL ALLEGATIONS

I. Raw Story Publishes an Article Defaming Epstein

15. On November 9, 2017, Raw Story published an article by David Ferguson entitled "Violent white nationalist who attacked black woman spotted at Kris Kobach's DC fundraiser" by defendant David Ferguson (the "Article"). The Article opened:

> "Notorious white supremacist and violent felon Marcus Epstein was spotted at Kansas Republican Secretary of State — and so-called 'King of Voter Suppression' — Kris Kobach's recent Washington, D.C. fundraiser, said the Southern Poverty Law Center (SPLC) on Friday." (Exh. A).

16. This is false. Mr. Epstein was never charged with or convicted of any felony and has never been convicted of any violent crime.

17. The Article also stated that, "In recent years, he has been a featured speaker at white nationalist conferences and publishes his writings in white nationalist journal The Social Contract."

18. This is also false. Mr. Epstein had not spoken at any conference in over eight years, and none of the conferences he spoke out before that could remotely be considered "white nationalist." Articles under the Mr. Epstein's byline had been *republished* by the Social Contract

4

Press, but not since 2009. Other authors who have had their work published or republished with permission by The Social Contract, sat for long-form interviews with The Social Contract, or served in leadership capacity with the organization include the late Democratic Senators Eugene McCarthy and Gaylord Nelson; Yale Law Professor and former Carter Administration official Peter Schuck; Frank Morris, the former executive director of the Congressional Black Caucus Foundation and dean of the historically black college Morgan State University; and the Harvard economics professor George Borjas, who is Hispanic.

II.     Raw Story Published the Falsehoods Maliciously

19.    On November 1, 2017, Mr. Epstein attended a fundraiser for Kansas Secretary of State Kris Kobach, who is running for Kansas Governor, at The Monocle, a restaurant in Washington D.C. This event was open to the public.

20.    The next day, Secretary Kobach posted a photo with former Donald Trump campaign manager Corey Lewandowski. In the background, a portion of Mr. Epstein's face is visible.

21.    On November 9, 2017, the Southern Poverty Law Center (SPLC) published a blog post entitled "White nationalist spotted at Kris Kobach for Governor fundraiser in Washington, D.C." This blog post falsely characterized Mr. Epstein as a "white nationalist" and took many facts out of context.

22.    However, the SPLC's blog post did not state that Mr. Epstein was a "violent felon," that "[i]n recent years, he has been a featured speaker at white nationalist conferences," or that he "publishes his writings in white nationalist journal The Social Contract."

23.    Aside from the false allegations described in Paragraph 22, all of the specific allegations that Raw Story used in the Article to smear Mr. Epstein originally appeared in the

SPLC's blog post, much of it block quoted or paraphrased. The SPLC blog post appears to be the only source for the Article.

24.     The clear intent of the Article was to vilify Mr. Epstein, a self-employed attorney who worked in low-level political jobs nearly a decade ago and has not sought media attention since, as an unreformed, unapologetic "violent felon" whose entire purpose in life is to act as a "racist provocateur" and instigate racial conflict.

25.     Consistent with its malicious purpose, Raw Story made no attempt to contact Mr. Epstein prior to publication. It also made no attempt to verify its numerous false allegations against Mr. Epstein. Instead, Raw Story fabricated, out of thin air, its charges that Mr. Epstein was a "violent felon," and that "[i]n recent years, he has been a featured speaker at white nationalist conferences." Raw Story's reason for inventing these false charges is clear: to attack and denigrate Mr. Epstein by falsely depicting him as a violent menace.

26.     The Article's characterization of Mr. Epstein could not be further from the truth. Like millions of Americans, Mr. Epstein struggled with alcohol abuse and prescription medication during his early 20s. This led to a number of misdemeanor arrests between 2004 and 2007, each occurring while Mr. Epstein was under the influence of alcohol. However, Mr. Epstein has never been charged with or convicted of any felony.

27.     On July 7, 2007, Mr. Epstein was arrested and charged with misdemeanor simple assault. Mr. Epstein was in an alcoholic blackout at the time and had no recollection of the incident.

28.     The police interviewed four witnesses. The alleged victim claimed he bumped into her. Her husband claimed he shoved her. A Secret Service agent who was across the street said he slapped her with an open hand. None of these witnesses said Mr. Epstein used a racial slur.

29.     An acquaintance of Mr. Epstein who was with him at the time said he uttered a

racial slur, though not directed at the alleged victim, and said he did not touch anyone. Prosecutors later added a bias enhancement to the charge. However, this did not elevate it to a felony.

30. On January 7, 2008, Mr. Epstein agreed to a deferred prosecution agreement ("DPA"), whereby Mr. Epstein would offer an Alford Plea to the misdemeanor assault charge (with the bias enhancement removed). However, Mr. Epstein would later be able to withdraw the plea, and have the charges dismissed, if he complied with the terms of the DPA. On July 7, 2009, Mr. Epstein withdrew his plea and the charges were dismissed, *nolle prosqui*, after he complied with the DPA. (Exh. B).

31. On July 8, 2007, following his arrest for misdemeanor assault, Mr. Epstein recognized the seriousness of his disease and made a decision to turn his life around. Through a combination of hard work, and therapy, and a twelve step program, Mr. Epstein has remained sober since July 8, 2007. Mr. Epstein has taken full responsibility for the mistakes he made while drinking, and has built his reputation based on his accomplishments he achieved in sobriety. He has had no legal problems other than minor traffic infractions since 2007.

32. Since becoming sober over a decade ago, Mr. Epstein graduated from the University of Pennsylvania Law School in 2014 and was admitted to the Maryland Bar in 2015 after fully disclosing his past legal problems. He is currently a self-employed attorney and antitrust policy analyst with a successful practice.

33. Between 2006 and 2009, Mr. Epstein worked in conservative political advocacy, primarily for organizations connected with Pat Buchanan, Bay Buchanan, and then-congressman Tom Tancredo. Mr. Epstein specialized in the topic of immigration. Between 2009 and 2011, he served as Pat Buchanan's research assistant, but has had no professional affiliation with Mr. Buchanan since then.

34. In May of 2009, a blogger discovered Mr. Epstein's arrest for misdemeanor assault and publicized it. This received a small amount of media attention, receiving coverage on MSNBC, CNN, and the New York Times. None of these accounts called Mr. Epstein a felon.

35. Mr. Epstein had been accepted to the University of Virginia School of Law ("UVA Law") to matriculate in Fall of 2009. However, in the wake of the media coverage of his past arrest, he and the administration of UVA Law came to an agreement that it was not best for him to begin under a cloud of controversy, and Mr. Epstein withdrew his intention to matriculate.

36. Mr. Epstein has not worked in politics since he was admitted to law school in 2011, nor has he written or spoken publicly on any topic not related to his academic or legal career in antitrust and regulatory law since then. He has entirely ceased publishing or speaking on immigration or other hot button political issues and has consciously sought to avoid any public attention. He does not even maintain a public social media page.

### III. Mr. Epstein Asks the Defendants to Correct the Falsehoods

37. On November 9, 2017, Mr. Epstein an email to defendant Roxanne Cooper along with other Raw Story editors, notifying them that the Article falsely called him a "violent felon," among many other inaccuracies. Mr. Epstein informed Raw Story that the false allegation in the Article that he was a "violent felon" had already damaged his reputation, and that it appeared to have been published maliciously and in bad faith. He demanded the Article be removed immediately and threatened legal action.

38. On November 10, 2017, Mr. Epstein sent a direct message over Twitter to Mr. Ferguson stating, "Your article falsely calls me a 'violent felon.' I had been charged with misdemeanor assault over a decade ago and the charges were dropped. Calling me a violent felon is false and defamatory *per se*." Mr. Epstein asked Mr. Ferguson to remove the Article. He received

no response from Mr. Ferguson.

39. On November 10, 2017, the Article was modified (as revised, the "Revised Article"). (Exh. C). The title was changed to "White nationalist who allegedly attacked black woman spotted at Kris Kobach's DC fundraiser," although the link continues to refer to Mr. Epstein as a "violent white nationalist."[1] Raw Story removed the direct claims that Mr. Epstein was a "white supremacist" who had spoken at "white nationalist conferences." However, it continued to prop up its "violent felon" smear and overall misleading impression of his activities with an edited section stating:

> "In addition to being a regularly featured columnist at white supremacist site VDARE.com, in 2009, Epstein entered an Alford plea in Washington, D.C. after he was accused of drunkenly assaulting a black woman and hurling racist epithets at her and her husband.
>
> '(An Alford plea is when a defendant maintains innocence but admits that the state has sufficient evidence to convict him and agrees to be treated as guilty.) Epstein satisfied the conditions of his Alford plea, withdrew the plea, and the charges against him were dismissed,' Slate explained in an article earlier this year."

40. The Revised Article included the following at the bottom: "Correction: A previous draft of this story said that Epstein was convicted of felony assault. Raw Story regrets the error."

41. The Revised Article did not clarify that Mr. Epstein was never even *charged* with a felony. Nor did the Revised Article acknowledge that the Article's claims that Mr. Epstein was a "featured speaker" at "white nationalist conferences" who "publishes his writings in white nationalist journal The Social Contract" were false, or offer any sort of formal retraction for these false statements.

42. The Revised Article failed to provide the additional context that would show its depiction of Mr. Epstein is false. For example, it fails to mention that Mr. Epstein has not worked

---

[1] The full link is https://www.rawstory.com/2017/11/violent-white-nationalist-who-attacked-black-woman-spotted-at-kris-kobachs-dc-fundraiser/

in politics or written on immigration for many years, but instead works full time as an attorney and regulatory policy expert; that Mr. Epstein is himself an ethnic minority; and that he is a recovered alcoholic who has repeatedly expressed regret for his arrests of over a decade ago. The Revised Article continues to convey the false impression that Mr. Epstein is an unapologetic, violent criminal who hates racial minorities and whose primary occupation is as a "white nationalist" writer and activist.

IV. <u>Mr. Epstein Has a Strong Reputation, Which Was Harmed by Defendants' Falsehoods</u>

43. According to Alexa.com, Raw Story is among the top 1,000 most visited websites in the United States. Raw Story's media kit boasts that it receives over four million unique visitors each year.

44. Raw Story employs "clickbait" headlines that are designed to spread quickly over social media.[2] Thus, the Article's false and sensationalist headline describing Mr. Epstein as a "[v]iolent white nationalist" ensured that its false and defamatory claims about Mr. Epstein were broadcast all over the world within minutes.

45. The viral spread of the story led many to repeat Raw Story's false accusations

---

[2] Raw Story's shoddy journalistic practices have been noted by others. On her widely-circulated list of "False, Misleading, Clickbait-y, and/or Satirical 'News' Sources," Merrimack College media professor Melissa Zimdars identified Raw Story as "Clickbait," defined as "[s]ources that provide generally credible content, but use exaggerated, misleading, OR questionable headlines, social media descriptions, and/or images. These sources may also use sensational language to generate interest, clickthroughs, and shares, but their content is typically verifiable." (available at https://docs.google.com/document/u/1/d/10eA5-mCZLSS4MQY5QGb5ewC3VAL6pLkT53V_81ZyitM/mobilebasic). Raw Story's inclusion on this list underscores its habitual poor and unethical journalistic practices, as well as the harm that its publication of false and defamatory information caused Mr. Epstein (because it is nonetheless widely seen as providing "generally credible content"). Note, however, that whether Raw Story's false statements accusing Mr. Epstein of being a "violent felon" were actually believed by anyone is "irrelevant" to Mr. Epstein's claim for libel *per se*. *Farnum v. Colbert*, 293 A.2d 279, 282 (D.C. 1972).

against Mr. Epstein.

46. Raw Story did not remove its Facebook post on the story. Many of the commenters on this post called Mr. Epstein a "felon" or "violent felon." (Exh. D).

47. Numerous posts on social media call Mr. Epstein a "felon," while linking to the article. (Exh. E).

48. A number of popular message boards including the Democratic Underground reprinted the article, including the false claim that Mr. Epstein was a "violent felon." Raw Story's editor responded the comments to the Democratic Underground that the piece was corrected. However, the main post on the message board still calls Mr. Epstein a violent felon. A reader would need to scroll down through several responses to see the correction. (Exh. F).

49. Mr. Epstein, through his attorney, wrote multiple emails and letters to Raw Story notifying Raw Story that its attempted revision was inadequate and that Mr. Epstein had suffered and was continuing to suffer significant damage. But Raw Story refused to take any further action.

50. Mr. Epstein has faced some negative media attention over his past political work and his arrest. However, the vast majority of people he works and socializes with are willing to look beyond these issues. This would not be the case if they believed him to be a "violent felon."

51. In 2011, Mr. Epstein was accepted to George Mason University School of Law ("GMU Law"). He disclosed his past political work, his arrests, and the ensuing media controversy. He also met with the Dean of GMU Law to discuss these issues. The Dean explained that he was fully aware of this history and was eager for him to attend.

52. Mr. Epstein excelled academically at GMU Law and has maintained strong relationships with many of his professors who were aware of his past legal problems.

53. Mr. Epstein applied to transfer in 2012. He disclosed his past arrests and work in

politics and was accepted to a number of law schools, including Georgetown, University of Pennsylvania, and New York University.

54. Mr. Epstein chose to attend the University of Pennsylvania Law School ("Penn Law"). Although it was not required, he met with the Dean of Students before matriculating to make sure the school were aware of the past controversy surrounding his arrest. The Dean assured him this did not affect the school's enthusiasm for him to attend.

55. Mr. Epstein developed strong relationships with his professors at Penn Law, receiving recommendations from several of them, all of whom were aware of his arrest, and the majority of whom were politically liberal.

56. Mr. Epstein received clerkship interviews from a number of federal judges—including two Democratic appointees—even after including an addendum in his clerkship application mentioning his arrests. One federal court of appeals judge, for example, wrote to him that he was "honorable" for acknowledging his past problems while noting that he "believes in second chances and that people can turn their lives around."

57. After graduating *magna cum laude* from Penn Law in 2014, Mr. Epstein applied for and was admitted to the Maryland Bar. Mr. Epstein disclosed his past arrests for the character and fitness review. While not required to do so, he included a separate addendum disclosing his past political work and the controversy that resulted from his arrest. Mr. Epstein passed the character and fitness portion of the bar without any further inquiries.

58. The Dean of Students at the University of Pennsylvania offered to write a letter endorsing Mr. Epstein's character and fitness if the bar had any concerns, which they did not.

59. After law school, Mr. Epstein accepted a job at a well-regarded regulatory law boutique after graduating from law school. He had fully disclosed his arrests. The managing

partner of the firm wrote in her offer letter, "We want you to know that we admire what you have accomplished and the candor you have shown in sharing your journey to this achievement."

60. Mr. Epstein left the law firm on positive terms in 2016 to start his own regulatory practice, which has become quite successful. The vast majority of Mr. Epstein's clients are aware of his past legal problems.

61. In sum, despite some negative pieces about him, in the decade since he quit drinking and the eight years since his arrest first received media attention, Mr. Epstein has built a successful professional career in spite of his past legal problems.

62. While Mr. Epstein has been subject to critical media coverage, no reputable publication had called him a "violent felon" prior to the Article.

63. Had his admission officers, bar examiners, employers, clients, law school deans, and professors believed him to be a "violent felon," he would have never been able to achieve any of these education and personal accomplishments.

64. Status as a convicted felon (let alone a "violent felon") is a permanent designation that carries with it serious and irreversible consequences. Loss of voting rights, exclusion from jury service, and ineligibility for government benefits are but a few examples. In federal court, a felony conviction is considered so probative of bad character that it is admissible to impeach the truthfulness of a witness. *See* Fed. R. Evid. 609(a)(1). A felony conviction is still a *per se* barrier to admission to the bar in several states. Even in states where disbarment is theoretically possible for certain felons, it extremely difficult as a practical matter for a "violent felon" to gain bar admission—to say nothing of obtaining employment and building a successful practice. Moreover, conviction of a violent felony would almost certainly result in disbarment for an attorney already barred. There is virtually no status in the world lower than that of a "violent felon." That is why,

under Washington, D.C. law, "a direct or indirect reference" to a person as a "felon" that is made with reckless or negligent falsity is libel *per se*. *Clawson v. St. Louis Post-Dispatch, L.L.C.*, 906 A.2d 308, 315 (D.C. 2006); *see also Kahl v. Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 218 (D.D.C. 2013) ("A statement if defamatory per se if it falsely imputes a criminal offense."); *rev'd on other grounds*, 856 F.3d 106 (D.C. Cir. 2017); *Farnum v. Colbert*, 293 A.2d 279, 281-282 (D.C. 1972).

65. In direct response to the falsehoods contained in the defamatory article, Mr. Epstein has experienced severe emotional distress with physical symptoms including nausea, fatigue, and loss of appetite.

V. Mr. Epstein Has No Connection to Secretary Kobach

66. Mr. Epstein is a private figure of no importance to the general public. The only conceivable newsworthiness of the Article and Revised Article was that their attacks on Mr. Epstein were actually attempts to attack Secretary Kobach using the time-honored technique of guilt by association, beloved by tyrants, dictators and demagogues throughout history.[3]

67. The major connection listed in the Article and Revised Article was that was Mr. Epstein's face appears, partially cropped out, in the background of a picture the Secretary took with another man.

68. The only other association it listed was to quote the Southern Poverty Law Center that:

> "In October 2015, Kobach was a featured speaker at the annual Writers Workshop put on by The Social Contract Press (TSCP), which regularly publishes the writings of white nationalists. Its journal, The Social Contract, has published four articles

---

[3] *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982) (noting that "guilt by association is a philosophy alien to the traditions of a free society"); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 178 (1951) (Douglas, J., concurring) (describing the technique of "guilt by association" as "one of the most odious institutions of history.").

from Epstein,"

69.     The Social Contract had *republished* four pieces by Mr. Epstein, the most recent being in 2009—six years prior to Secretary Kobach speaking at their conference, which Mr. Epstein did not attend.

70.     Mr. Epstein has never had any professional or personal relationship with Secretary Kobach.  The fact that part of his head appears in the background of a photo of Secretary Kobach at a public event is not newsworthy and does not make Mr. Epstein a public figure for any purpose.

## COUNT I

### Defamation/Libel Per Se Under District of Columbia Law

71.     Mr. Epstein re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if they were fully set out herein.

72.     Under District of Columbia law, libel consists of 1) a false statement, 2) published to a third party without privilege or authorization, 3) with fault amounting to at least negligence, 4) that either caused special harm or constitutes defamation *per se* (and is thus actionable without causing harm). *Jankovic v. International Crisis Group,* 429 F.Supp.2d 165, 173-4 (D.D.C. 2006).

73.     The Article falsely stated that Mr. Epstein was a "violent felon" when he never was charged with or convicted of a felony.

74.     The article was published without any privilege.

75.     Publication of the article amounts to at least negligence, and likely recklessness. Defendants did not contact Mr. Epstein before making false claim. There are no reputable publications which have previously described as a felon. Mr. Ferguson appears to have simply made up the false claim that Mr. Epstein was a felon to add to the sensationalism of his smear piece and further vilify and attack Mr. Epstein. Mr. Ferguson has a long history of insults, name-

calling and vicious, unfair personal attacks from his time blogging pseudonymously as "T-Rex." Raw Story knew of this history when it hired him.

76. The use of words like "notorious" show the false description was malicious, written with the intent to harm Mr. Epstein's reputation.

77. While in certain situations, a prompt correction can show demonstrate lack of malice, the editor's modification of the article—after the falsehood had been repeated and spread all over the social media and the internet—does not negate negligence or recklessness.

78. Mr. Epstein is not a public figure. While he once had a very small role in conservative politics, he has consciously avoided the spotlight for over eight years and has not availed himself to the media.

79. Mr. Epstein is not a limited purpose public figure in relation to Secretary Kobach due to part of his face appearing in the background a photograph of Secretary Kobach with another man at a public event. The Article's and Revised Article's attempt to tie Mr. Epstein to Secretary Kobach are so tangential that they do not have a significant relationship to the newsworthiness (or lack thereof) of the story.

80. While other publications may have written about this trivial connection between Mr. Epstein and Secretary Kobach, they are within their legal rights to publish a non-newsworthy item which mentions Mr. Epstein so long as it does not defame him. Only Raw Story called him a "violent felon."

81. Falsely claiming that someone is a "felon" is defamation *per se*, and there is no need to prove special damages. *Clawson v. St. Louis Post-Dispatch, L.L.C.*, 906 A.2d 308, 315 (D.C. 2006); *see also Kahl v. Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 218 (D.D.C. 2013) ("A statement if defamatory per se if it falsely imputes a criminal offense."); *rev'd on other*

*grounds*, 856 F.3d 106 (D.C. Cir. 2017); *Farnum v. Colbert*, 293 A.2d 279, 281-282 (D.C. 1972).

## PRAYER FOR RELIEF

82. As a proximate result of Defendants' conduct as set forth in all the preceding paragraphs, Plaintiff was damaged.

83. For the torts of defamation, libel and false light, Epstein demands such legal or equitable relief as provided by law, including, but not limited to, the following:

 a. Removal of the article from Raw Story's website and social media pages.

 b. Compensatory damages of $250,000 for damage to his reputation;

 c. Compensatory damages of $100,000 for damages to Mr. Epstein related to emotional distress;

 d. Punitive damages of $250,000 for Defendants' reckless and malicious conduct;

 e. Reasonable attorney fees and costs in bringing this action;

 f. Prejudgment interest; and

 g. Any other relief that this Court deems just and equitable.

## MISCELLANEOUS

84. Bench trial is demanded.

85. Mr. Epstein reserves the right to amend this Complaint, including the right to add additional counts and/or parties through discovery and up to trial of this action as investigation and discovery further warrant.

WHEREFORE, Mr. Epstein is seeking damages in an amount to be demonstrated by the evidence up to the sum of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00) in compensatory damages for damage to his reputation, ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($100,000) in compensatory damages for emotional distress,

TWO HUNDRED AND FIFTY DOLLARS ($250,000) in punitive damages, prejudgment interest, his attorneys' fees and costs, and such other relief as the Court and/or jury may award.

Dated: June 22, 2018                              Respectfully submitted,

*/s/ Noah B. Peters*
Noah B. Peters, Esq. (#1023748)
1015 18th St. N.W.
Suite 204
Washington, D.C. 20036
Telephone: (202) 499-4222
Facsimile: (202) 318-7071
noah@noahpeterslaw.com

***Counsel for Plaintiff***